The first case for argument this morning is 16-1881 Enzo Biochem v. Applera. Mr. Spears. Good morning, Your Honor, and may it please the Court. So we're back again for the third time in the 13-year history of this litigation. Is this it? Perhaps. We hope not. Perhaps. We'll see. A litigation that we believe the District Court prematurely concluded. As to Claims 1 and 8, that Court granted summary judgment on an issue of technological equivalence, where the only evidence applying the function-away result test came from Enzo's expert. As to Claims 67, 68, and 70, the District Court denied those claims the scope they plainly defined and indeed afforded them no scope whatsoever. The patented issue claims a composition. Do you understand the decision below and the last Federal Circuit opinion to interpret 67, 68, and 70 as limited to only embodiments that are capable of indirect detection? No, I do not read the Court's prior opinion in that way. Are all indicator molecules capable of direct detection? Absolutely, and I would refer the Court to Column 18, Lines 8-15, and Column 1, Lines 61-67, that describe direct detection of indicator molecules. That's exactly what they are. Are all fluorescent indicator molecules always capable of direct detection? Absolutely, and there's no evidence to the contrary. That's always been the assumption underlying this case. Is rhodamine as an indicator molecule always capable of direct detection when used as an aid? As long as it's present in sufficient concentrations that it can be directly detected, which is true in all of the accused products. Don't we have a problem in that our case law does say that a dependent claim can't actually contradict an independent claim, right? Respectfully, I disagree with that. This Court has recognized that a dependent claim can have a scope entirely outside of an independent claim. This Court first made that recognition in the Pfizer case in 2006, and more recently it was recognized in the multi-layer clean stretch bill. But in a way that actually contradicts the independent claim? Yes, absolutely. In the Pfizer case, the dependent claim claimed, I believe it was, an acid, whereas the dependent claim claimed an acid, whereas the dependent claims were limited to... No, it claimed a salt, whereas the claim it depended on was limited to lactones and acids. In multi-layer clean stretch, the dependent claim called out a polymer residue that wasn't listed in the claim from which it depended. But was that a situation in which the claim construction said that the independent claim actually excluded the things that were then in the dependent claims? I don't read that this Court's decision is affirmatively excluding that claim scope. The Court said that A needs to be one component of a multi-component signaling system. In the dependent claims, the dependent claims are an independent definition of A. Claim 67 tells you what A comprises. Claim 67 tells you A comprises an indicator molecule, and we all know that those are detectable directly. Claim 68 tells you that the indicator molecule is fluorescent, electron-dense, or an enzyme that can cause a precipitate to form. All of that is directly detectable. Claim 70 tells you that the fluorescent indicator molecule can be a fluorescent erotome. We all know that those are directly detectable. For a long period of time, the claims of the United States patent have been understood to constitute separate definitions, independent definitions of the invention. When you do that with Claims 67, 68, and 70 on their own terms, each of those claims cover a directly detectable A. Did you ever dispute the Federal Circuit's use of Claim 1 as representative for purposes of liability? There was no reason for us to dispute that because that came out in the Court's opinion. We did move for reconsideration afterwards, and that motion was denied. Can you clarify that? You moved for, after the last ENSO opinion, you moved for reconsideration? Yes, we did. You moved for re-hearing? Yes, re-hearing. In your re-hearing petition, did you call out the dependent claims, differentiate those from the independent claims, and so forth? Only to suggest that the panel's decision on the construction of Claim 1 was incorrect. Right. That's right. As far as whether the panel's decision created a potential invalidity defense of improper dependency for Claim 67, 68, or 70, that wasn't our issue. That was a Plera's issue to raise, and they never raised it at any time. But you didn't, in your motion for re-hearing, you did not say, and the Court failed to rule separately on the scope of Claims 67, 68, and 70. That's exactly right. Okay. Turning to Claims 1 and 8, when we received the Court's decision, we considered for the first time the possibility that they were infringed under the doctrine of equivalence. Spying no legal bar like prosecution history has done, we viewed this as purely an issue of technological equivalence, perhaps, by applying the function-way result test. So what is the first step of that analysis? You have to identify the function relevant to indirect detection of using an A that's a component of a multi-component signaling moiety. This Court has indicated that when determining what the function of a limitation is, the best place to look is the patent itself. And when you look at the patent, the patent clearly tells us what the function is of using an A that's a component of a multi-component signaling moiety. That function is signal amplification. But this presupposes the conclusion that our prior opinion did not say that the claims don't support direct detection. That's exactly right. So you don't get there unless you went on the initial construction of that prior opinion. Well, as to Claims 67, 68, and 70, I agree with that. As to Claims 1 and 8, we are taking this Court's construction of the definition of A as limited to direct detection, identifying a function of that limitation, which is stated in Column 19 as one of signal amplification. The reason that you indirectly detect A by reacting it with something else is to substitute a stronger signaling source for A itself, whose signal might be too weak to detect. And that's the function that Dr. Sinden identified in his declaration. The next step of that analysis is to take a look at the accused infringement and see if there's something in it that carries out the same function. The accused products in this case... I'm still not following. We said in the prior opinion that the claims do not, quote, support the inclusion of direct detection. And then we have multiple cases, including Dolly and others, that say that the concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims. That's not how I see our equivalence theory. What this Court did was to limit Claim 1 to an A that has to be reacted with something else to detect it. The function of doing that is to amplify the signal. In the accused products, the signal of A is amplified by increasing their concentration through PCR enzymes. This is in no way the opposite of what is claimed in Claim 1. In fact, these processes are complementary because you can do both of them, in theory. This is not a case where we are advocating a scope of equivalence that is the opposite of what is being claimed. More importantly... Where is that standard? Okay, that's right. If you're not claiming the opposite, that doesn't mean that there's equivalence there. The definition of equivalence is it's not the opposite, right? That's exactly right. The evidence is our uncontroverted expert declaration that identifies the relevant function as the very function that is identified in the patent. And this Court precedent tells us that if you have a function identified in the patent, that's the function you run with. But what about the way? Even his, he said the difference is that increasing concentration versus increasing strength. Isn't that a different way? It is a different way. And under the doctrinal equivalence, as long as those ways are substantially similar, you can find infringement. Dr. Sinden declared... Did he say anything? I just couldn't find anything in his opinion where he said that one of ordinary skill and art would understand those two things to be substantially equivalent. I refer the Court to Appendix 855, Paragraph 7 of Dr. Sinden's declaration. And keep in mind that what I'm about to read is not controverted by any submission from ABI. It's Appendix 855. In the mid-1980s, a person of ordinary skill in the art of nucleotide analysis sequencing would have viewed as insubstantial the difference between PCR amplification in the accused products and the use of enzymes attached to AVID and to amplify the signal of the biotinylated nucleotide. That's the schematic in Column 19. As to the indirectly detectable A of Claim 1, the use of PCR to amplify the signal of the DNA sequences labeled by the fluorescent dieterminators in the accused products serves the same function to make the signal detectable by the methodology to be employed in ways that differ insubstantially, increasing concentration versus increasing strength, to yield the identical result, a detectable signal. So in Claim 1, we are amplifying the signal by associating a weakly signaling A with a stronger signaling source. In the accused products, we're doing that amplification by increasing the concentration of A to a point where it can be detected. So that bold assertion without any kind of explanation as to how those two are effectively the same is supposed to be enough? And it is enough. And I refer to the court's decision in the Brilliant Instruments case where there was an expert declaration of basically an identical scope to the one submitted by Dr. Senden. And this court found that such a declaration raised a genuine issue of disputed fact and therefore vacated the summary judgment of non-infringement under the Doctrine of Violence. I want to take you back to Pfizer. Your argument that Pfizer applies here hinges on a finding of improper dependence, which at least in that case meant that the two claims dealt with non-overlapping subject matter. Right. Why do you think that Claim 1 and its dependent claims here do not have overlapping subject matter? Because Claim 1 has been construed in a way that A cannot be the whole of the signaling moiety. Claims 67, 68, and 70 on their express terms define an A that can be the entire signaling moiety and expressly detected. Therefore, their scope is entirely outside of the scope of A as this court has construed A in Claim 1. And Pfizer applies fully to this case. What ABI should have requested this court to do was to hold Claims 67, 68, and 70 invalid for improper dependence. But ABI didn't do that. Instead, they asked this court to hold those claims not infringed, which is improper in light of Pfizer and in light of multilayer stretch film. These claims have the scope that they define. You're into your rebuttal. Okay. Save it. Thank you. Mr. Hoffman. Good morning, Your Honors. May it please the court, Rob Hoffman for a plera. Judge Wallach, I'll pick up just where you left off. What I want to read is the second sentence of Section 112D of the patent statute. A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers. What that means in unambiguous terms is that the limitations of the claim of an independent claim are automatically part of the dependent claim. So the limitation at issue in the prior appeal is still at issue when we're talking about Claims 67, 68, and 70. Is it your understanding that the dependent claims recite structures that are always capable of direct detection? I don't know the answer to that. It may be that they are, but that doesn't preclude the need to claim an infringement, to have also the claim structure that is claimed in Claim 1. A has to be something that complexes with something else to form the signaling moiety. And there's no dispute that our products don't do that. That's the issue. And what Mr. Spears, I think, respectfully does is he gets away from the claim language and what the claim limitation really is. This is a modified nucleotide described to have a very particular structure. The structure is that it's been changed in such a way that it adds this part called referred to as A. This A is a little molecule that is capable of complexing with something else. It has a chemical reaction with something else to form a signaling moiety. Our products don't do that. Our products are modified in such a way that we have a very large molecule attached to our terminator molecule. But before we get to what your products do, we've got to conclude that the lower court's interpretation of our prior opinion was correct and that the claim construction that limits 67, 68, and 70 to indirect detection only is correct, right? Agreed. And let's talk about that, the prior opinion. It begins by reciting all five claims at issue in the prior litigation, the prior trial. It talks about the claims at issue throughout the appeal. It refers to Claim 1 as representative of the claim limitations of applicable to all for the obvious reason that Claim 1 is the independent claim at issue and the claim limitations automatically pursuant to 112D apply. It then construes the critical language in the claim, at least one component phrase, and then also the linkage group that connects this A does not substantially interfere with formation of the signaling moiety that the claim does not cover a modified nucleotide that has a molecule attached to it that is itself the entire signaling moiety at issue. And then it concludes by saying, it doesn't reach our enablement or written description arguments, which were expressly raised as alternative arguments. If any claim, if you go back and you look at pages 50 and 59 of our prior briefing, where we begin both the written description and enablement arguments, we say if any claim at issue in this appeal is construed to cover direct detection, then it's invalid for lack of written description. Look, if we believe all the dependent claims have to be capable of indirect attention, everybody's going to agree that summary judgment was appropriate. In that case, do we need to get to the question of invalidity of the dependent claims? I'm asking that because I'm looking at footnote two on page 29 and the prior oral argument. And you noted that your counsel at oral argument last time suggested that the patent, that limiting the patent to indirect detection would probably leave claim 70 with no meaningful scope, but that 67 and 68 could probably be reconciled with the claims construction. How would you reconcile 67 and 68? Well, again, I don't see that primarily as my job. I don't know if it has any scope, but since you asked what I would say. Well, since it's in your footnote. I don't know what an indicator molecule means. That's the key term in claim 67. But what I do know is there's no logical reason why whatever that indicator molecule is, that it shouldn't have to complex with some other chemical. And remember, that's exactly what the claim requires. It shouldn't have to complex with some other chemical in order to form the signaling moiety that is then used to enable detection. I don't know whether that's necessarily the way you would read it. I don't know. I don't see that, again, as my job to try and fill content for a 13-year later added dependent claim that, if it's given the scope that Enzo is asserting, is, in our view, invalid to begin with anyway. And I want to just pause over our invalidity arguments. Not only did this court did not reach our prior invalidity arguments, which would be a very peculiar way to dispose of that prior appeal if the court did not construe all the dependent claims to be limited by the representative claim. So that's one. And two, as for improper dependency under 112d, that was raised. They, for the first time, they did not say anywhere in the prior briefing, your honors, there's no reason for us to have an appeal here because they've only challenged claim scope as to claim one. This is the last time around. They didn't say last time. They only challenged claim scope as to claim one. So even if you agree with them on the construction of claim one, well, the judgment's going to stand under the dependent claims. They never said that. So when they went back into the district court, and for the first time we saw this, said, what are they talking about? First of all, we couldn't have imagined that. We didn't believe that that was a plausible reading of anything that had happened in the prior appeal. And then when they said it, we asserted it at the first opportunity. There's no waiver when the first time you're given an opportunity to raise an argument, you do. And so they've admitted improper dependency. So even if you think that the prior panel did not construe the claims as limited by the indirect detection only limitations in claim one, it's invalid for 112D. It's also invalid for written description. They're also invalid for written description and enablement as well as we argued in the proper appeal. My own view is this is already done and tied up in a bow by the prior appeal. So I'll turn to the doctrine of equivalence. And Judge O'Malley, I want to begin where you were as I understood your questions. Here's the problem. Did you notice that Mr. Spears started talking about signal amplification? But doctrine of equivalence is a claim limitation by claim limitation analysis. Signal amplification is not the claim limitation. Signal amplification is, in their view, the function of the indirect detection limitation. Now, we don't necessarily agree with that, but let's hold that. In terms of the way what you were talking about, go ahead and look through that Sindon Declaration. I've read it over and over and over again. At no time does Dr. Sindon say, so I've looked at the way, the indirect detection claim limitation, which requires the small molecule that's capable of complexing with something else, and I've looked at it and said, oh, that's the same way of accomplishing a signal amplification as having a large molecule attached to a modified nucleotide that you have to develop a special enzyme in order to enable it to hybridize effectively with an oligopolymer. Well, he didn't explain it. He said it. I actually don't think he said that at all. He didn't talk about the underlying mechanisms that are really at issue. You're correct that he baldly asserted that PCR is insubstantially different from the avidin peroxidase reaction, but PCR isn't the feature of our claim, the direct detection feature of structure of our claim, that corresponds to the claim limitation at issue, which again is not the avidin peroxidase reaction, but is this A, complexing with something else, structure of the claim. That's completely absent, and that's why we didn't put in an affidavit in response. We didn't have anything to respond to. I didn't want to break the thread of argument, counsel, but be careful about denigrating bald assertions. Everything I say, Your Honor, I've been there. I'm right there with you. I'm right there with you. What impact does the recent Milan institutional case have, where we say function way result isn't necessarily the end of the inquiry? Well, I don't know how you can get, whatever else there is to do, I don't see how you can get in this claim to this scope of equivalence, and let me explain why. If you have cases over and over and over again, the court has said, the doctrine of equivalence cannot be used to jettison structural limitations of claims, and it is repeatedly observed that a structural claim limitation may have little or no scope or range of equivalence. And let's look at the patent itself for this, and if you look at column six of the patent, column six, lines 30 to 38, and I'm going to start at line 30 and then jump down to line 36. Column six lists several, quote, essential criteria, essential criteria of this invention. And if you, the first one refers to the fact that the nucleotide is modified in such a way that it adds something normally not found, which it calls a probe. That's A. That's A. And then the second modification says the probe must react specifically with chemical or biological reagents to provide a sensitive detection system. That's what I'm talking about the structure. This structure is essential. This structure is as important to the claimed invention as the ability to be detected itself. And your cases over and over and over again saying an essential feature of the patent like that cannot be within the scope of equivalence because that's the equivalent of saying that A is not A, or as in more, that minority means majority, or as in the more recent power integrations case where you had an expert testimony saying, I worked on it, I couldn't get it to, there was a feedback signal issue, and he said, I couldn't get it to work with one, so I made multiple feedback signals. And the court said, well, and then when the patentee tried to cover a single feedback signal within the scope of equivalence, this court said, you can't do that. You can't do that. And this is just like that. You've got a claimed structure that clearly requires an additional chemical reaction. Again, earlier in the patent, it refers in sort of summarizing the invention at the bottom of column 2 to the top of column 3. These nucleotide derivatives, the modified nucleotide, as well as polynucleotides and coenzymes that you see will interact specifically and uniquely with proteins. The interaction is essential. And that's why, as a matter of law, there is simply no way to include our direct detection product, our product where there is no feature that interacts at all. Not interacting and interacting cannot be equivalent. And when interaction with some other chemical component, some other chemical, is essential to the claim, then whatever scope of equivalence these claims have, it can't cover that. I respectfully suggest that it has very little scope of equivalence, and there's nothing wrong with that. There's just nothing wrong with that. Unless your honors have further questions. Thank you. Thank you. This is not a case in which we are asserting a scope of equivalence that goes directly contrary to what is provided in Claim 1. Yes, the patent does describe in very strong terms how important it is to take weakly signaling A's and associate them with a strong signaling source to detect them. But doctrine of equivalence, you're starting with an assumption that there is no literal infringement. And while all those statements may be relevant to the construction of Claim 1, they are not relevant to a doctrine of equivalence analysis. But what about the last point that he made in Column 6 where it talks about that it would be critical to have a reaction? How can you have something that's critical to the claims and yet, by way of equivalence, still be able to infringe? I'm going to quote from this Court's decision in Cadence v. Accella Pharmaceuticals. In that particular case, the patent claimed a specific order of process operations, steps 1, step 2. In the accused infringement, they were carried out in the reverse order. So the infringer said this is the very antithesis of what is being claimed, much like the argument that ABI is advancing here. The Court did not find that at all relevant, noting that vitiation is not an exception or threshold determination that forecloses resort to the doctrinal equivalence, but instead is a legal conclusion of a lack of equivalence based on the evidence presented and the theory of equivalence asserted. In this particular case, the evidence presented is Dr. Sinden's function-way result analysis where he takes as a starting point the function that's identified in the patent, signal amplification, finds the same function carried out by PCR enzymes in the accused infringement, and then goes on to say that these are substantially similar ways to yield an identical result. And that analysis was entirely proper and, at the very least, raised a disputed issue of material fact. I'd like to conclude by noting in response to a concern that Judge Wallach raised. A plera has not cited a single case, nor is there a single case for them to cite, that has used an independent claim to claw back scope from a claim from which it depends. Instances of improper independence, such as FISR, such as multilayer stretch, such as this case, occur infrequently. But when they do, what the defendant has to advocate for is a finding of invalidity, which ABI never did before the prior panel that heard this case. Thank you. We thank both sides. The case is submitted.